The next matter on our calendar is Carson Optical v. Alista Corporation and RQ Innovation, Inc. Good morning. May it please the Court. My name is John Horvath. I'm here for Carson Optical, the appellant. I reserve two minutes for rebuttal. This is an appeal from a preliminary injunction denial in a false advertising case. The falsely advertised products are magnifying mirrors, often used to apply makeup, and the like. I call them falsely advertised products because the undisputed expert testimony before the District Court was that the defendants sell 10 such falsely advertised products, and they're grossly overstated in terms of the advertised magnifying values, up to 500% of the actual magnifying power. Mr. Horvath, this is Ms. This is on denial of a preliminary injunction, correct? Correct. And so we're on abusive discretion review, correct? Correct, with the understanding that the Coca-Cola case from 1982 sets out a rather unique definition of abusive discretion in this particular context. And that's part of what our discussion is about. But the underlying proceedings are ongoing, is that right? Yes, Your Honor, absolutely. And what is the status, please? The status is we're in fact discovery, with a fact discovery deadline at the end of the summer, which could very well get pushed because of the various circumstances we're experiencing. Uh-huh. So you will have an opportunity there to prove damages as you can? To the best of our ability, yes. If there's a But no other rulings in the interim, is that right? That's correct. No other substantive rulings? That's correct. Okay, thank you. You're welcome. So this expert testimony I focus on because it's undisputed. There was no rebuttal expert testimony from the other side. The testimony expert in nature came from a professor at the Delphi University, a leading expert in the field of optics. He measured each of the products. He determined... I need to interrupt again, Mr. Horvath. I found Dr. Heck's certification kind of... And compared to Dr. Zeng's certification or declaration, kind of like two ships passing in the night. It wasn't at all clear to me that they were even talking about the same thing. This was very... It was very summary and not having any scientific background really at all. I thought that Dr. Heck's conclusory statement at calling this grossly inaccurate was hard to digest. You have a burden of making a very strong showing here about both irreparable harm and the falsity of the advertisements. And I wish you could clarify for me why we should accept this as a... I mean, there were no ads attached. He's listed his chronology of employment, education, and publications about art, among other things, and just says that this is grossly inaccurate. But there are varying kinds of magnifying power that are used and they're discussed far more extensively in the opposing affidavit. So I'm not sure that this is a kind of slammed up by Dr. Heck's affidavit. Could you tell me what I'm missing here, please? Yeah, absolutely. You called Dr. Zeng. Dr. Zeng, he is not a doctor in any shape, way, or form. His explanation was quite clear, however. Yeah, yeah. But Dr. Heck is a scientist. He is an academic and he did set out his as to what he did and why he did it. And then he set out the results of testing each and every one of the 10 products and how they deviated from the advertised magnifying power. And so the question for the district court was, do you accept the unbiased expert testimony of Dr. Heck or the biased testimony, which was hearsay laden, from Mr. Zeng? And I'd be happy to go back to the judge to evaluate that question. That did not, as you know, happen. Instead, she erroneously applied the irreparable harm standards on the Second Circuit precedent. And so I think you raise interesting questions, but they were never reached. And I think they should have been reached. On the irreparable harm... Excuse me, just as a factual question, does the record show how many mirrors your client sells in a month on average on Amazon? It does not, but it shows that there are three such products that Carson does advertise and sell on Amazon. And when did they start to sell those products? Those began to be sold in and around January of 2019, around the time that we decided to have Professor Heck evaluate the fancy products. We're entering the market... Yes. So those are recent additions to your inventory. Oh, absolutely. Yes. But if, as it appears, Amazon has data for how many hits on your competitor's website were made from your website, isn't that a way of saying that your injury is not irreparable? You can always figure out the maximum number of people who checked the two ads out and decided to... And that surely is the maximum amount of injury your client could have sustained. Yeah. Your Honor, I think there's three answers to that. The first is that that ignores the reputational harm that occurs to Carson each and every time the falsely advertised product appears on Carson's product page. And that harm is direct, immediate, and irreparable under the Second Circuit precedent because it diminishes the value of our products in the eyes of the consumer each time that happens. And reputational harm under this circuit's precedent is, open quotes, not calculable, nor, open quotes, precisely compensable. It's also not something that Carson should have to endure. The notion of allowing a competitor to falsely advertise on another competitor's product page and harm their reputation in irreparable ways is something that's antithetical to this court's precedent. Number two- Counsel, this is Judge Brewer. If you have a number of click-throughs, why isn't the damage compensable in money? Well, first, you can't measure the harm to reputation by simply the number of click-throughs. Nor can you measure the harm to Carson's goodwill. So, for example, if there's a customer who is a long-standing customer of Carson and is about to purchase a product, is confronted with the false advertising, and gets diverted, there is simply no way to measure the future lost earnings that Carson would have earned if that customer wasn't diverted somewhere else for the long term. And this court has said, money damages cannot redress, open quotes, the loss of a relationship with a client that would produce an indeterminate amount of business in years to come. And so, there's no way to measure and compensate that type of harm with money. Finally- But still, the Supreme Court has told us in eBay that we are not to presume, generally, damages, and there's no entitlement to equitable relief. And in each case, we should look closely at the kinds of evidence presented of irreparable harm. You have your affidavit by Mr. Cameron, which is fairly generic, and you're now asserting, you know, entry to goodwill and reputation, but we don't have any customer affidavits or anything more concrete. We're all still kind of presuming and assuming, I think. And while it's plausible, I'm not sure that that's an adequate basis for awarding preliminary injunctive relief. Am I wrong in that? Do we need to presume damage? No, Your Honor. I think you're right and wrong. So, the law, in our view, clearly is, eBay and Wynter apply. Salinger was right in its dicta that they should apply to pretty much all cases. It should certainly be held here that eBay and Wynter apply to Lanham Act cases. The language in the Lanham Act is identical to that in the Patent Act, and so there's no reason not to apply eBay and Wynter. What you're not correct in, though, Your Honor, is that eBay, Wynter, and Salinger also clearly held that there's a corollary. Yes, we don't presume irreparable harm. Yes, it must be proven, but equity in the determination of whether it's proven must be done in accordance with the wisdom and logic that underlies equity jurisprudence and the long tradition of that, particularly in the Second Circuit. And that long tradition is that literally false comparative advertising, as we have here, necessarily causes irreparable harm to the target, here at Carson. And so, with the proof of false advertising, which is literally false, and two, it coming up regularly on Carson's product pages, the record shows 75 times in a 57-day period, so often, and that's only what we captured. Who knows what else happens? That does prove irreparable harm under Second Circuit precedent, under the corollary rule of eBay and Wynter, which must apply here. And I believe that, Your Honor, is what was missed by the district court. That is the error. Does the record show that, or can we infer from this record that RQ and Alista are buying or bidding for space through Amazon so that their ads will appear directly opposite Carson? I'm not really familiar with that mechanism, and I didn't see in the record a full explanation of how that would happen. Your Honor, I think there's multiple ways in which what you see can happen. There's keyword advertising. There's also Amazon marketing services, or there's called sponsored product ads. And yes, you pay money to Amazon for it to come up on your competitor's page. You know they're interested in the product. You have a competitive product. You want to put it right below the cart. So you believe it's fair, the record shows that this was targeted, the record before the district court shows this was a targeted attack on your product. Is that right? Yes. There's no other way for it to get there, other than for the competitor to put it there, and quite frankly, to pay for it to be put there. And somebody asked about the maximum number of click-throughs, and let me just put a fine point on that. I do think that Amazon, because you pay for it, you do know the maximum number of targeted customers, but you don't know how many then purchase. You don't know how many then go on to buy the competitive product. And without that component, which doesn't exist, there's no way to really measure the burden of sales with simply the maximum number of click-throughs. Yes, I agree with Judge Jacobs. It gives you the maximum number, but it doesn't give you a reasonable estimate of damages. And that's what the law of damages requires. It doesn't allow us to say, well, here's the maximum, give it to us. We have to prove with much more certainty. And this court has said in this context, diverted lost sales proof is virtually impossible, virtually impossible to prove. And so it's with that backdrop, I think this court adopts eBay, adopts Winter, seizes on the Vixen and Salinger, but you can't do that in isolation. You need to adopt it with the long tradition of equity practice in the circuit, which says, hey, when somebody is targeting in a comparative way and creating false comparative advertisements with a plaintiff, that raises huge red flags because of immediate harm to reputation, immediate harm to goodwill, diverted sales, which are notoriously difficult to calculate. And these are things that should not happen. A person should not have to endure these types of harms. And so your time has expired. Okay. Good morning, your honors, and may it please the court. My name is David Lynn on behalf of the defendants of police, a list of court and RQ innovation, Inc. Of course, your honors, a preliminary injunction is one of the most drastic judicial remedies and should not be routinely granted. As I believe judge Carney noted, a plaintiff has a heavy burden on the factual side and their, the factual merits in this case are far from a slam dunk for them. But as to the specific issue we're dealing with today regarding their reparable harm, as Mr. Horvath mentioned, both parties agree that the traditional four-factor test for preliminary injunctions applies here. We think the district court's decision was well within her discretion. This position, however, is in contrast to Carson's argument in the district court that irreparable harm is presumed and no detailed study is necessary to conclude that yes. So this is judge Pooler. Would the record reveal that your clients specifically paid Amazon for the privilege of being next to Carson obstacle when someone was searching for magnifying cosmetic mirrors? Your honor, I would refer you to page one 10 of the appendix. RQ did not target Carson. RQ did by keywords on Amazon and those keywords were completely agnostic to Carson. Those keywords were like magnifying mirror keywords or general category keywords. So there was no specific targeting. I would differentiate this case from the cases that Mr. Horvath referred to in dealing with the history of irreparable harm cases pre-ebay. First of all, this case is unique in that it is not a two-player or essentially binary competitive market, nor is this case one where one party makes false representations about a competitor specifically by name. Instead, this is the case with many, many hundreds or thousands of sellers of makeup mirrors, and one of those sellers is making claims about its own products. Accordingly, we think the district... Excuse me. Judge Carney, could you help me understand in what respect Professor Hecht's certification calling the advertised values of your client grossly inaccurate and in what way that is incorrect, if at all? Well, I don't want to get too into the science behind this, but we believe that the numbers, the way that they were measured, the distance from the curvature of the mirror, we think that is not in line with industry standards. But the fact of the matter... You do contest that characterization that your advertised magnifying power is grossly inaccurate. Correct. Correct. We do contest that. That is a factual issue, and there are many other factual disputes. We have an argument that even if he is right, that is not a material matter for customers because customers, they know that the more magnification, the more distortion there is to the mirror. So there are many factual matters here in that we think that the judge in the district court was correct on all three of the bases that she determined that plaintiffs did not show a likelihood of irreparable harm. First of all, they did not provide any evidence of reputational harm or harm to their goodwill. As a district court... Judge Carney, we've said in the past, though, even though certain... Generally irreparable harm and entitlement to preliminary injunctive relief. We've still said in the past, and logic does seem to dictate that if a direct competitor falsely advertises in a targeted way side by side with the primary competitor and makes claims about its own product that are patently untrue, that there can be no other way to conceive of the situation other than as damaging the goodwill and reputation of the impugned competitor. And I don't really see why that logic shouldn't still hold. I mean, why does it really serve anyone's purpose to go out and get an individual consumer who would give an affidavit saying, I saw that, I was confused? Does that really advance the ball? Aren't we entitled in our past logic to conclude that goodwill and reputation would be harmed? I'm not sure we would absolutely need specifically a consumer survey. The fact is that Carson did not provide any evidence, even with respect to their own determinations of their goodwill and reputation. I would note that the cases... I'm going to interrupt again, though, but what in your view would be accurate? You're saying that you criticize them for not providing anything, but it's not clear to me what would be adequate. What would you propose? I would want some evidence that their reputation has been harmed. And just their president saying that it's harmed, or right now in Carson's brief, they only really point to the argument that because the mirrors are, quote, grossly exaggerated, then if so facto their reputation and goodwill is harmed. I think this is the exact type of presumption that eBay and its line of cases prohibits. I would also note that in the cases preceding eBay, there are really just two players in the market, or a binary market, or a situation where the defendant is making claims specifically about the plaintiff and specifically targeting the plaintiff. That's not what we have here. Sir, I come back to my question. So, are you saying that they need to get an affidavit from a consumer who would say, I thought less of the company because I saw this ad? Well, I would say that that would help. I would also say that perhaps something that would help be an affidavit showing that sales have been affected or, you know, either across the mirrors line or across all their product lines. Some sort of factual basis for the conclusion that their reputation and goodwill has been affected. Otherwise, it's just creating a presumption. I would note that in the Third Circuit case, Group SEB USA, the court also rejected the notion of presumption, but was happy to rely on an affidavit from, I believe, the company's director of marketing, kind of attesting to all the things we've just been talking about. But there's no customer survey. There was no customer affidavits. The record was still limited at best. I would say in that case, you know, first of all, we're talking about two very big players in the steam iron industry. I would also say that in that case, the court specifically also found that it was impossible to calculate the harm monetarily and that the comparative claim was totally unsubstantiated. I have one question, and I see that time is running. I may be quite wrong, but I thought from the record that there's some earlier case over this that was scheduled to be filed in that case is still scheduled for trial. I believe that, right, we're waiting for trial. But with respect to that case, I mean, the case is basically complete as to pre-trial, and we're waiting for trial. The trial date has been pushed off. I don't know how to put this, but why do we have two cases here? That's a good question. I would say that Carson just came into this market in January of 2019. So, you know, perhaps their argument is that, you know, they weren't ready to file. I would note that because there were two cases, Carson did know about our mirrors and our advertising since 2016 or 2017, and they're just filing for a preliminary injunction now, and therefore that delay is really inexcusable for preliminary injunction. Who were the parties in this earlier case? Is it the same parties? It's Carson versus RQ and RQ's principal, Brendan Zhang. Alyssa is not part of that other case. Counsel, your time has expired. Mr. Horvath, you have two minutes for rebuttal. Yes, thank you very much. Judge Jacobs, the reason there's two cases is that the first case involves a very different product line from the second case. The first case focuses on all the time to read the paper, and we, Carson, have been in that business for a long time. In that case, is the claim based on the same kind of invasion of your space with these pop-up ads? Yes, in part it is. Was the preliminary injunction fought in that case? We did not do that in that case. Were you being irreparably harmed in that case? Why not? No, I think we continue to be irreparably harmed in that case. It turns out to be, you know, a questionable strategic decision not to file a preliminary injunction in that case, and we weren't going to make that mistake again. Thank you. Yep, and so to go to two very quick points. The argument that the other cases were a two-player binary market, I would respectfully point you to the appendix A60, the top page, top advertisement there. If you look at that ad, it's a snapshot of Amazon product page for Carson, and the fancy product, which is falsely advertised, is right by the cart where you would check out to buy a Carson product. That is the definition of a two-player binary market. They're side by side. Somebody's interested in making a a direct false comparison is being made right then and there, and for each and every time that this happens, and again, the record shows that it happened 75 times in a 57-day period. Secondly and finally, Judge Carney raised the issue of the Third Circuit case. I think it is directly, I don't think it is, I know it is directly on point to what this court needs to do. The group SCB court said, hey, yes, eBet applies, but we also have a long tradition of enjoining preliminarily, right away, people who engage in literally false comparative advertisement because it's so bad, and it caused such irreparable harm to the competitor, and the record there is as what Judge Carney represented, that they're competitive products. The one product is falsely advertised. Those advertisements are put against the plaintiff, and the Third Circuit squared up the long tradition of enjoining that type of wrongful conduct with eBet, and that proof there was less persuasive and less compelling and less comprehensive than what we have here. We have an academic who's declared under oath that they're numerous times it's coming up against Carson's competitive products. With that, I think you need to reverse. I think you need to direct the district court to reevaluate the claim of irreparable harm in light of this court's long-standing precedence in jurisprudence, and thank you very much for the time. Thank you, counsel. Thank you both. We reserve decision in